# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **HUNTSVILLE GOLF DEVELOPMENT, INC.** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | **Case No.: 5:13-CV-671-VEH** |
| **v.** | ) | |
| | ) | |
| **WHITNEY BANK,** | ) | |
| | ) | |
| **Appellee.** | ) | |

---

## MEMORANDUM OPINION

### INTRODUCTION

Huntsville Golf Development, Inc. ("Huntsville Golf") appeals from an adverse final judgment entered by the United States Bankruptcy Court for the Northern District of Alabama. In support, Huntsville Golf has filed a brief outlining its arguments for reversal. The appellees – Whitney Bank ("Whitney") and Mr. Stuart Maples, Trustee of the Bankruptcy Estate of Nelson and Charlene Chatelain – have responded. Huntsville Golf has, in turn, replied to these documents. For the following reasons, the court will **AFFIRM** the bankruptcy court's opinion below.

### STANDARD OF REVIEW

In an appeal of a bankruptcy court decision, the district court sits as an

appellate court. In that capacity, this court cannot make independent factual findings, and it must affirm the bankruptcy court's factual findings unless they are clearly erroneous. *Ala. Dep't of Human Res. v. Lewis*, 279 B.R. 308, 313-14 (S.D. Ala. 2002) (citations omitted); *see also In re Spiwak*, 285 B.R. 744, 747 (S.D. Fla. 2002) ("A district court reviewing a bankruptcy appeal is not authorized to make independent factual findings; that is the function of the bankruptcy court.") (citation omitted); Fed. R. Bankr. Proc. 8013 (stating that, on appeal, bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous"). A finding of fact is clearly erroneous when – even if there is evidence to support it – the reviewing court is left with the definite and firm conviction that a mistake has been committed. *In re Hatem*, 273 B.R. 900, 903 (S.D. Ala. 2001) (citation omitted).

By contrast, the court reviews the bankruptcy court's legal conclusions de novo. *In re Brown*, 303 F.3d 1261, 1265 (11th Cir. 2002) (citation omitted). Finally, a bankruptcy court's equitable determinations are reviewed for abuse of discretion. *Spiwak*, 285 B.R. at 747-48 (citation omitted).

## STATEMENT OF THE CASE

With this standard in mind, the court summarizes the following basic case

facts.[1] On May 20, 1992, Nelson J. and Charlene L. Chatelain filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the U.S. Bankruptcy Court for the Northern District of Alabama ("the bankruptcy court").[2] The Chatelains are the sole shareholders of Huntsville Golf. Before the Chatelains filed their Chapter 11 petition, Huntsville Golf filed an arbitration demand against Brindley Construction Company, Inc. ("Brindley"). Huntsville Golf asserted various claims against Brindley arising from a construction contract formed between the two parties on December 18, 1989. On August 16, 1992 – after the Chatelains filed their petition – Huntsville Golf secured an arbitration award in its favor against Brindley in the amount of $376,316.75. The U.S. District Court for the Northern District of Alabama confirmed the arbitration award and entered a judgment finalizing it on December 24, 1992 ("the Brindley Judgment").

During the course of the Chatelains' bankruptcy case, Whitney timely filed a proof of claim, asserting an unsecured claim in the amount of $1,144,263.06 and a secured claim in the amount of $1,876,062.29. On November 23, 1993, the bankruptcy court issued an Order confirming the Chatelains' Second Amended Plan

---

[1]The court bases this narrative directly upon the bankruptcy court's factual findings recorded in its "Order Granting Motion to Reopen," dated January 11, 2012. Doc. 2-7.

[2]That case was styled in *In re Nelson J. Chatelain and Charlene L. Chatelain*, Case No. 92-81161.

of Reorganization ("the Confirmation Order"). A provision of the Confirmation Order

reads as follows:

> Whitney National Bank raised the issued [sic] that the plan does not reflect that
> one of the debtor's corporations, Huntsville Golf Company, of which they are
> the sole shareholders, has a judgment against Brindley Construction Company
> in the approximate amount of $350,000. It should be noted that the debtor,
> Nelson Chatelain, has an account receivable against this corporation in the
> approximate amount of $300,000. The testimony given at the hearing indicated
> that this judgment cannot be collected because Brindley Construction
> Company does not have any funds. It is the opinion of this Court that the
> debtors should attempt to collect this judgment, and that any funds which are
> collected shall be subject to the jurisdiction of this Court and made available
> for distribution to unsecured creditors.

The Order concluded with the following statement:

> It is therefore ORDERED, ADJUDGED AND DECREED that the debtors'
> Second Amended Plan of Reorganization be and hereby is confirmed
> conditioned upon the debtors pursuing the collection of the judgment against
> Brindley Construction Company and providing for the payment of the debt
> owed to National Union if determined to be nondischargeable.

On December 29, 1993, the bankruptcy court closed the case and entered a final

decree.

Huntsville Golf continued its efforts to enforce and collect its judgment against

Brindley. To this end, the corporation instituted a proceeding against Brindley in the

U.S. District Court for the Middle District of Tennessee.[3] Huntsville Golf  alleged,

---

[3]That case was styled *Huntsville Golf Development, Inc. v. Brindley Construction
Company, Inc., et al*, Civil Action No. 1:08-CV-00006.

4

among other counts, claims seeking to pierce the corporate veil with respect to Brindley; Brindley Construction, LLC (f/k/a The Brindley Company, LLC); Brindley Construction Group, LLC; The Brindley Company (f/k/a Brindley Development Corporation); Brindley & Associates, Inc.; Brindley Development Company, LLC; Brindley Holdings, LP; Brindley Homes Corporation; The Brindley Company, LP; the Estate of Robert Brindley, Sr.; and Ronald Brindley (collectively, "the Brindley Group"). On November 28, 2011, Huntsville Golf and the Brindley Group entered into a Mutual Settlement Agreement and Release ("the settlement agreement"). Under this agreement, the Brindley Group agreed to pay Huntsville Golf the amount of $985,000.00. A portion of this payment covered the legal fees and expenses Huntsville Golf incurred in enforcing the arbitration judgment. After payment of such fees and expenses, Huntsville Golf maintained in its possession roughly $510,000.00 of the settlement payment.

On December 2, 2011, Whitney moved to reopen the Chatelains' bankruptcy case. On January 11, 2012, the bankruptcy court entered an order re-opening the case. Under this order, the court instructed Huntsville Golf to escrow $510,000.00 into its attorney's trust account subject to the court's further orders. On February 20, 2013, the court granted Whitney's "Motion for Payment of Claims and Appointing a Disbursing Agent. The court sua sponte appointed a Chapter 11 Trustee to determine

5

the unsecured creditors' claims. It also ordered Huntsville Golf's counsel to transfer the escrow funds to this Trustee. On February 25, 2013, the bankruptcy court denied Huntsville Golf's Motion for Reconsideration. On March 29, 2013, Huntsville Golf petitioned the bankruptcy court for a stay pending appeal. On April 1, 2013, the court denied Huntsville Golf's request.

Huntsville Golf filed a Notice of Appeal with this court on April 11, 2013. Doc. 1. It submitted its appellant's brief on April 25, 2013. Doc. 7. Mr. Maples filed his appellee's brief on May 9, 2013 (doc. 10), and Whitney filed its appellee's brief on May 13, 2013 (doc. 11). Huntsville Golf replied on June 1, 2013. Doc. 14. On June 7, 2013, Huntsville Golf filed a Motion for Stay Pending Appeal. Doc. 15. The court denied this motion on September 6, 2013.

## DISCUSSION

The court finds that the Confirmation Order was res judicata and that it precludes the collateral attacks Huntsville Golf attempts to make upon it in the present appeal. Because the corporation could have introduced these objections at the time of the original judgment, it may not make them now before this court. Huntsville Golf also tries to undermine Whitney's efforts to complete administration of the Chatelain bankruptcy estate on other grounds. As set out in more detail below, these arguments fail on their merits. For these reasons, the court will affirm the bankruptcy

6

court's opinion.

# I.

"[A] confirmation order satisfies the requirements of a judgment that can be given preclusive effect." *In re Optical Technologies, Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005) (citing *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990)) (internal quotation marks and alteration omitted). For res judicata – or claim preclusion[4] – to apply, the following conditions must exist:

- the prior judgment must have been valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process;

- the judgment must have been final and on the merits;

- there must be identity of both parties or their privies; and

- the later proceeding must involve the same cause of action as involved in the earlier proceeding.

---

[4]The Eleventh Circuit has defined "res judicata" and "claim preclusion" in the following manner:

> Res judicata is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation arises from the same cause of action, then the judgment bars litigation not only of every matter which was actually offered and received to sustain the demand, but also of every claim which might have been presented . . . . [W]e refer to this strand of former adjudication as claim preclusion.

*Justice Oaks*, 898 F.2d at 1549 n.3 (internal quotation marks and citations omitted). Similarly, in this opinion, the court refers to res judicata in the sense of claim preclusion.

*Id.* at 1300-01. "When all of the requirements of claim preclusion are satisfied, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every claim which might have been presented." *Justice Oaks*, 898 F.2d at 1552 (citing *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319 (1927)) (internal quotation marks and alterations omitted). Huntsville Golf maintains that none of the res judicata elements are satisfied in this case, so the court will analyze each one in turn to show why they in fact apply.

## A.

Huntsville Golf first argues that the bankruptcy court lacked subject matter jurisdiction to issue the Confirmation Order. Doc. 7 at 16-19.[5] Relying on *Stern v. Marshall*, — U.S. — , 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), it maintains that the court improperly trespassed jurisdictional boundaries by including the Brindley Judgment within the Chatelains' bankruptcy estate. *Id.* According to Huntsville Golf, the bankruptcy court was not "of competent jurisdiction" to rule on that subject because it concerned an ancillary state-law matter unrelated to the administration of

---

[5]All citations to the record in this opinion employ the numbering system dictated by the Case Management/Electronic Case Files (CM/ECF) system, *not* that necessarily used by the parties in their various submissions.

the Chatelains' bankruptcy. *Id.* at 26-28. The corporation claims that the Confirmation Order was thus invalid.

Huntsville Golf may not raise this objection here. The bankruptcy court issued the Confirmation Order roughly twenty years ago. The Chatelains – *or any party in interest* – could have appealed the judgment at that time to the district court on the basis that the bankruptcy court exceeded its jurisdiction. *See Justice Oaks*, 898 F.2d at 1551 (quoting 11 U.S.C. § 1128) ("Any 'party in interest may object to confirmation of a plan.'"). No party did so, and the judgment thus became final. By disputing subject matter jurisdiction at this juncture, Huntsville Golf is effectively mounting a collateral attack[6] on the bankruptcy court's final judgment. This is impermissible. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (citing *Nevada v. United States*, 463 U.S. 110, 130 (1983)) ("But once the 1986 Orders became final on direct review (*whether or not proper exercises of bankruptcy court jurisdiction and power*), they became res judicata to the parties and those in privity with them, not only as to every matter which was offered and received . . . but as to any other admissible matter which might have been offered for that purpose.") (emphasis added) (internal quotation marks omitted); *Kontrick v. Ryan*, 540 U.S. 443,

---

[6]A collateral attack is "[a]n attack on a judgment in a proceeding *other than a direct appeal*." *Wall v. Kholi*, — U.S. —, 131 S. Ct. 1278, 1284, 179 L. Ed. 2d 252 (2011) (emphasis in original) (citations omitted).

455 n.9 (2004)) ("Even subject-matter jurisdiction . . . may not be attacked collaterally.") (citations omitted); *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment.").[7]

---

[7]There are limited exceptions to this rule that apply in certain extraordinary circumstances. The Supreme Court in *Travelers Indemnity* outlined these instances:

[W]e have recognized rare situations in which subject-matter jurisdiction is subject to collateral attack. *See, e.g.*, *United States v. U.S. Fidelity & Guaranty Co.,* 309 U.S. 506, 514, 60 S. Ct. 653, 84 L. Ed. 894 (1940) (a collateral attack on subject-matter jurisdiction is permissible "where the issue is the waiver of [sovereign] immunity"); *Kalb v. Feuerstein,* 308 U.S. 433, 439–440, 444, 60 S. Ct. 343, 84 L. Ed. 370 (1940) (where debtor's petition for relief was pending in bankruptcy court and federal statute affirmatively divested other courts of jurisdiction to continue foreclosure proceedings, state-court foreclosure judgment was subject to collateral attack). More broadly, the Restatement (Second) of Judgments § 12, p. 115 (1980), describes three exceptional circumstances in which a collateral attack on subject-matter jurisdiction is permitted:

The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

557 U.S. at 153 n.6 (internal quotation marks omitted).The Court did not formally adopt these latter exceptions because the parties in that case did not claim they applied. *Id.* Similarly, Huntsville Golf does not argue that any of these extraordinary circumstances prevail here. Nevertheless, the court sua sponte finds no grounds for concluding that the Confirmation Order was a "manifest abuse of authority" that was "plainly beyond the court's jurisdiction."

In response, Huntsville Golf emphasizes that it is a separate legal entity than the Chatelains. *See, e.g*, Doc. 7 at 20-21. This is accurate. However, this fact does not permit the corporation to collaterally attack the Confirmation Order. The following facts compel this conclusion:

- The Chatelains were the sole shareholders of Huntsville Golf;

- Mr. Chatelain had a roughly $300,000 account receivable against the corporation; and

- the bankruptcy court *explicitly* referenced these facts in its opinion.

*See* Doc. 2-1 at 2. Huntsville Golf was thus a "party in interest" that had sufficient notice of the Chatelains' bankruptcy action and the claims – both actual and potential – against it related to that action. This court therefore finds that the corporation had the opportunity to object to the bankruptcy court's jurisdiction at that time, and it failed to do so. It cannot do so now. *See Travelers Indem.*, 557 U.S. at 153 ("So long as respondents *or those in privity with them* were parties to the Manville bankruptcy proceeding, and were given a fair chance to challenge the Bankruptcy Court's subject-matter jurisdiction, they cannot challenge it now by resisting enforcement of the 1986 Orders.") (emphasis added) (citations omitted).

For this reason, the court finds that the Confirmation Order was a valid judgment issued by a court of competent jurisdiction for the purposes of res judicata.

11

*See id.* at 154 ("[T]he need for finality forbids a court called upon to enforce a final order to tunnel back for the purpose of reassessing prior jurisdiction de novo . . . if the law were otherwise . . . the rules of res judicata would be entirely short-circuited.") (citations and internal alterations omitted).

### B.

Huntsville Golf next challenges whether the Confirmation Order constitutes a "final judgment on the merits." Generally, a bankruptcy court's confirmation order does qualify as such. *See U.S. Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (citation omitted); *Justice Oaks*, 898 F.2d at 1550 ("The issue has been settled for some time: a bankruptcy's court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits") (citations and footnote omitted).

Huntsville Gold does not dispute this general point. However, it argues that this res judicata element does not apply in this case because (1) Whitney's relief request exceeds the scope of the original Confirmation Order, and (2) the Confirmation Order is ambiguous as to certain significant issues. Doc. 7 at 28-30. The first point does not affect whether the Confirmation Order is itself res judicata, so the court will not address it here. On the second point, Huntsville Golf claims that the Order is fatally ambiguous "because it fails to clarify how the funds collected on the judgment are to

be subjected to the jurisdiction of the Court – since the assets of [Huntsville Golf],

a separate legal entity, are not part of the Debtor's estate." *Id.* at 29. Huntsville Golf

further complains that the Order was unclear on how the Chatelains would collect on

the account receivable Huntsville Golf owed them. *Id.* Huntsville Golf concludes that

the Confirmation Order "[a]t best . . . constitutes a final order allowing for the use of

[Huntsville Golf's] judgment against [Brindley] to pay the [Chatelains'] unsecured

creditors." *Id.* at 28. According to Huntsville Golf, this court "cannot apply res

judicata until it 'unravels the ambiguity' and determines how the particular issue was

actually resolved in the order." *Id.* at 29 (quoting *In re Miller*, 284 B.R. 121, 124

(N.D. Cal. 2002)).

The court does not agree. Huntsville Golf cites a few decisions issued by courts

outside this circuit concluding that semantic ambiguity in a judicial order can

preclude res judicata. *See Miller*, 284 B.R. at 124 ("If the [reorganization] plan is

ambiguous, then this Court cannot find that a claim is barred by res judicata until it

unravels the ambiguity and determines how the claim was actually resolved. The

ambiguity may also reflect the absence of any final decision on the merits of the

particular issue at stake."); *In re Rubinski*, 349 B.R. 320, 323 (Bankr. D. Mass. 2006)

(citing *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93-94 (4th Cir. 1995)) ("Where a plan

is ambiguous with respect to its treatment of particular aspect of a creditor's claim,

however, courts have found that res judicata does not necessarily apply.").

The court finds the reasoning behind these decisions broadly persuasive. But, it does not find the Confirmation Order in this case ambiguous in any material respect. The Order, in relevant part, provided as follows:

> Whitney National Bank raised the issued [sic] that the plan does not reflect that one of the debtor's corporations, Huntsville Golf Company, of which they are the sole shareholders, has a judgment against Brindley Construction Company in the approximate amount of $350,000. It should be noted that the debtor, Nelson Chatelain, has an account receivable against this corporation in the approximate amount of $300,000. The testimony given at the hearing indicated that this judgment cannot be collected because Brindley Construction Company does not have any funds. It is the opinion of this Court that the debtors should attempt to collect this judgment, and that any funds which are collected shall be subject to the jurisdiction of this Court and made available for distribution to unsecured creditors.

Doc. 2-1 at 2. This language is unambiguous on the issues at the heart of Huntsville Golf's appeal. That is, the Order clearly identified:

- that Huntsville Golf[8] had an outstanding judgment against Brindley;

- the approximate amount of that judgment;

- the relationship between the Chatelains and Huntsville Golf;

- the specific fact that Huntsville Golf owed money to one of the Chatelains;

---

[8]In its brief, Huntsville Golf notes that the bankruptcy court mistakenly labeled it "Huntsville Golf Company," rather than its proper title, "Huntsville Golf Development, Inc." Doc. 7 at 19. It does not maintain that this aspect of the Order is fatally ambiguous, nor would this court conclude such.

14

- the approximate amount of that debt; and

- its conclusion that the Brindley Judgment should consequently be integrated into the Chatelain bankruptcy estate when and if Huntsville Golf collected on the judgment.

In other words, the Confirmation Order specified the relevant parties, their relationships, the premises of its ruling, and the ruling itself. This clarity distinguishes it from the cases in the decisions cited by Huntsville Golf. *See Miller*, 284 B.R. at 125-126 (finding that conflicting statutory interpretations and conflicting parol evidence as to meaning attached to material terms in Confirmation Order supported conclusion that Order was sufficiently ambiguous to preclude res judicata); *See In re Witaschek*, 276 B.R. 668, 679-681 (N.D. Okla. 2002) (holding that confirmation order language was not sufficiently unambiguous to sustain res judicata and overcome the statutory presumption against discharging child support debt); *Rubinski*, 349 B.R. at 322-324 (finding that res judicata could not apply to discharge creditor debt when generic language of order did not explicitly dictate such).

The fact that the Confirmation Order does not spell out precisely how the Brindley Judgment would be incorporated into the Chatelain bankruptcy estate does not doom the Order.[9] In finding that the Brindley Judgment, when collected, "shall

---

[9]Huntsville Golf does not cite any authority standing for such a proposition, and the court is unable to find any in its own research.

be subject to the jurisdiction of this Court and made available for distribution to unsecured creditors," the Confirmation Order was adequately concrete in its determination. It thus qualifies as a "final judgment on the merits."

## C.

Huntsville Golf next argues that the parties to this case are not the same as those subject to the Confirmation Order. On the one hand, it acknowledges that this requirement is "possibly" satisfied as to its relationship with the Chatelains. Doc. 7 at 25. The court finds that it is indeed satisfied for the reasons stated previously. *See supra* pp. 9-11; *see also Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 821 So. 2d 158, 165 (Ala. 2001) (quoting *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co.*, 513 S.E.2d 692, 706 n.16 (W. Va. 1998)) ("Generally, a corporation is in privity with its *sole shareholder* for collateral estoppel purposes. A ruling adverse to a controlling person of a corporation precludes the corporation from litigating that claim in a subsequent action.") (emphasis in original) (citations omitted).

Huntsville Golf disputes, however, that Whitney is the same entity now that it was in 1993. It notes that Whitney and the Estate of Robert Brindley, Sr. ("the Brindley Estate") signed an agreement four days after settlement of the Brindley Judgment in which the two parties agreed to share any proceeds derived from the

settlement. Doc. 7 at 25-26. This agreement apparently cited Louisiana law as governing. *Id.* at 26. Huntsville Golf maintains that this agreement formed a general partnership between Whitney and the Brindley Estate under Louisiana law. *Id.* Therefore, when the bankruptcy court later re-opened the bankruptcy case, Huntsville Golf claims that Whitney was "before the Bankruptcy Court as a general partner to a Louisiana general partnership – an entirely different party than the one previously before the Bankruptcy Court 19 years ago." *Id.* Huntsville Golf thus argues that the required "identity of parties" does not exist to sustain res judicata.

Under Louisiana law, "[a] partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit." La. Civ. Code Ann. Art. 2801. To be considered a partnership, a business relationship must meet the following criteria:

- the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill, or industry, furnished to the business in determined proportions by them;

- all parties must share in the losses as well as the profits of the venture; and

- the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest.

*Medline Indus. v. All-Med Supply & Equip.*, 653 So. 2d 830, 833 (La. App. 1 Cir.

4/7/95) (citations omitted). "[T]here are no hard and fast rules in making the determination of whether a partnership exists, and each case must be considered on its own facts." *Sacco v. Paxton*, No. 2012–CA–1595, 2014 WL 528755, at *12 (La. App. 4 Cir. 1/30/14) (citation omitted). "The consent to form a partnership may be inferred from circumstantial evidence." *Id.* (citation omitted)

Whitney argues that Huntsville Golf has failed to meet these criteria in two respects; it hasn't shown that (1) the parties intended to form a partnership or that (2) the parties shared in their supposed venture's losses. Doc. 11 at 34-35. On the latter point, Whitney reveals that the Brindley Estate agreed to be responsible for all costs and expenses associated with their sharing agreement. *Id.* at 35. Further, the agreement contained an indemnification clause whereby the Brindley Estate consented to covering any costs Whitney may incur during performance of their contractual relationship. *Id.* According to Whitney, these deficiencies preclude the existence of a partnership. *Id.* at 36.

In reply, Huntsville Golf notes that, under Louisiana law, the subjective designations that the parties use in an agreement do not determine whether they are legally forming a partnership. Doc. 14 at 15. Instead, Louisiana law instructs courts to look to the totality of evidence to determine whether the parties objectively intended to form a partnership. *Id.* at 16 (citations omitted). Huntsville Golf argues

that the actions of Whitney and the Brindley Estate – rather than the labels they employed – objectively reveal that they intended to form a partnership between them to mutually benefit from the settlement. *Id.* at 16-17. Additionally, Huntsville Golf points to the Louisiana Code in arguing that an indemnification clause does not preclude the existence of a partnership. *Id.* at 17-18 (citations omitted). Because Whitney still bears the risk of liability to third parties for conduct it takes under its sharing agreement with the Brindley Estate, Huntsville Golf argues that the "mutual loss" prerequisite is satisfied. *Id.*

Huntsville Golf's latter point is persuasive: under Louisiana law, indemnification agreements between parties do not necessarily prevent the formation of a partnership. *See* Revision Comments – 1980 (d), La. Civ. Code Art. 2801 ("The notion of mutual risk does not preclude the possibility of one or more partners agreeing to protect other partners against losses that the partnership may incur, although a stipulation of that kind would not affect third persons.") (citation omitted). However, Huntsville Golf does not muster sufficient evidence to convince the court that Whitney and the Brindley Estate intended to form a partnership – rather than a mere contract to divide settlement proceeds.

A review of their sharing agreement supports this conclusion. Doc. 164-5.[10] In that document, the parties record that they "have agreed to pursue jointly the recovery of any funds paid into the bankruptcy estate of Nelson and Charlene Chatelaine." *Id.* at 1. As part of the agreement, Whitney consented to take all necessary legal action to enforce its existing claim against the Chatelains under the 1993 Confirmation Order. *Id.* at 2. The Brindley Estate, in turn, agreed to finance all reasonable legal fees and expenses related to that action. *Id.* In consideration for this payment, Whitney further agreed to "equally share any proceeds realized upon a distribution of any portion of the judgment proceeds" related to Whitney's claim against the Chatelains. *Id.* Finally, the Brindley Estate agreed to indemnify Whitney from "all claims, demands, actions, proceedings, judgments, damages, penalties, experts' or attorneys' fees, losses, liabilities, costs, charges, and expenses of whatsoever kind" that Whitney may incur performing under the agreement. *Id.*

This document constituted a contract between two independent parties to evenly divide settlement proceeds. It did not, however, possess sufficient indicia to qualify as a partnership or joint venture under Louisiana law. The Louisiana First Circuit in *Cajun Elec. Power Co-op Inc. v. McNamara*, 452 So. 2d 212 (La. Ct. App.

---

[10]This citation is to the record in the bankruptcy action below. The court uses it because neither party attached the sharing agreement to its submissions before this court.

1984), identified seven elements that were relevant in determining whether parties had formed such an entity. *Id*. at 215. The so-called "*Cajun Electric* test" requires:

- A contract between two or more persons;

- A juridical entity or person is established;

- Contribution by all parties of either efforts or resources;

- The contribution must be in determinate proportions;

- There must be joint effort;

- There must be a mutual risk vis-à-vis losses; and

- There must be a sharing of profits.

*CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, No. 09-1047-JJB, 2012 WL 1565337, at *2 (M.D. La. Apr. 30, 2012) (citing *Cajun Electric*, 452 So. 2d at 215). The sharing agreement between Whitney and Brindley lacked several of these essential elements. While each party had duties of performance under the agreement, they did not contribute jointly in determinate proportions to their common goal. Moreover, their agreement did not establish a cognizable juridical entity that was separate and apart from the two independent parties. In short, the sharing agreement was just that – a one-time contract between separate entities.

For these reasons, the court finds that the Whitney Bank that appeared before the bankruptcy court in 2012 when this case was re-opened shared substantial identity

with the Whitney Bank before that court in 1993 when the court entered the Confirmation Order at issue in this case. This res judicata element is thus sustained.

**D.**

Finally, Huntsville Golf disputes that this suit constitutes the same cause of action as the one between Whitney and the Chatelains in the 1992-93 bankruptcy proceedings. Huntsville Golf maintains that the facts of the present case – and the relief it currently seeks – are materially different from the salient features of the 1992-93 case. Doc. 7 at 30-32. The corporation emphasizes that it formed its settlement agreement with eleven different defendants – only one of which was Brindley Construction Company (against whom it had secured the original arbitration judgment). *Id.* at 30-31. This settlement was only possible after it had initiated two separate lawsuits against these defendants, achieved a favorable judgment from the U.S. District Court for the Middle District of Tennessee, and had that judgment appealed by the Brindley Group. *Id.* Huntsville Golf underscores that none of these facts were before the bankruptcy court in the 1992-93 proceedings. *Id.* at 31. Moreover, it reiterates that it was not a party to the earlier proceeding and thus could not have presented its jurisdictional arguments to that court. *Id.* at 31-32. Because the settlement funds belong to it rather than the Chatelains, it argues that the present action is a wholly different "non-core" proceeding that is unrelated to earlier "core"

22

proceeding that addressed the administration of the Chatelain bankruptcy estate. *Id.* at 32.

Huntsville Golf offers an improperly narrow interpretation of this res judicata element. The Eleventh Circuit has recently analyzed this criterion in the bankruptcy context. *See In re Atlanta Retail, Inc.*, 456 F.3d 1277, 1288 (11th Cir. 2006) (citation omitted). The court's statements on the subject are therefore relevant in framing this court's analysis here:

> In order to determine whether the two proceedings are based on the same cause of action, the test is whether they arise out of the same nucleus of operative fact, or are based upon the same factual predicate. In order to compare the actions, it is necessary to look not only at the facts that were before the bankruptcy court, but also the factors which the bankruptcy court was required by statute to consider in making its previous decisions. This is premised on the notion that the bankruptcy court has addressed in the confirmed plan and order only those issues that are *properly* within the scope of the confirmation hearing. If the evidence crucial to the second action was never raised before the court in the first action, it is powerful evidence that the two cases are not based on the same nucleus of operative fact.

*Id.* (internal citations and quotation marks omitted) (emphasis in original).

With these principles in mind, the court finds that the 1992-93 and 2012-13 proceedings were based upon the same nucleus of operative fact. The bankruptcy court in 1992-93 confronted two debtors, Nelson and Charlene Chatelain, who had filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. One of the couple's assets was Huntsville Golf, of which they are (and were) the sole

23

shareholders. After the Chatelains filed for bankruptcy, Huntsville Golf secured an arbitration award against Brindley in the amount of $376,316.75.

Whitney was originally one of the Chatelains' secured creditors and a "party in interest" in their bankruptcy case.[11] Whitney intervened frequently in the bankruptcy process during that period. It filed several objections and motions before the court – including a motion to formally integrate the Brindley Judgment into the Chatelain Estate. Over Whitney's objection, the bankruptcy court confirmed the Chatelain's Second Amended Plan of Reorganization on November 23, 1993. In apparent response to Whitney's concerns, the court included in the Confirmation Order the directive reproduced above: that, when and if Huntsville Golf collected the Brindley Judgment, the award would be subject to the court's jurisdiction and then distributed to the Chatelain's unsecured creditors.

When the court re-opened the Chatelains' case in 2012 – at Whitney's behest – the relevant facts and parties remained largely the same. In the intervening period, Huntsville Golf had endured a rigorous judicial process to secure its arbitration award against Brindley and its related entities and owners. After the parties had reached a settlement in the amount of $985,000, Whitney – who was not a party to the

---

[11]By the time the court issued the 1993 Confirmation Order, however, only the unsecured portion of Whitney's claim remained.

settlement process – asked the bankruptcy court in this district to re-open the Chatelain case to administer the settlement proceeds in accordance with the Confirmation Order. The court granted this request, identifying the action as a "core proceeding" under 28 U.S.C. 157(b)(2) and claiming jurisdiction over the proceeds as "newly recovered" or "discovered" assets under the Confirmation Order. Doc. 1-7 at 1. After a hearing, the court granted Whitney's motion and ordered the Chatelains to have Huntsville Golf transfer approximately $510,000 of the settlement amount into a trust account maintained by its counsel.[12] Upon Whitney's motion, the court later entered an order appointing a Chapter 11 trustee to determine how best to distribute the trust funds.

Given this undisputed factual narrative, the 2012-13 bankruptcy proceedings clearly form a continuum with the 1992-93 proceedings. In its order granting Whitney's motion to re-open the case, the court observed that it had retained jurisdiction in the 1993 Confirmation Order over any funds collected from the Brindley Judgment. Doc. 2-7 at 4-5. It further noted that 11 U.S.C. § 350(b) authorized it to re-open any case "to administer assets, to accord relief to the debtor,

---

[12]The court rejected Huntsville Golf's argument that the amount placed in escrow should be limited to the $350,000 – i.e., the original judgment amount. Doc. 2-7 at 4-5. The court reasoned that the Bankruptcy Code entitled unsecured creditors like Whitney to post-petition interest before any surplus reverted to a solvent debtor. *Id.*

or for other cause" and that several decisions within this circuit recognized it had broad discretion to do so. *Id.* at 5 (citations omitted). Therefore, when the court decided to place the funds in escrow and to appoint a trustee to disburse them, it confronted not only similar facts but also similar statutory considerations as it had before issuing the 1993 Confirmation Order. For these reasons, this court concludes that the two proceedings involved the same cause of action for res judicata purposes.

## II.

The court thus finds that the 1993 Confirmation Order was res judicata. It must now determine which claims it precludes in the present action. In its brief before this court, Huntsville Golf makes the following legal arguments:

- The bankruptcy court did not have jurisdictional authority to enter orders in this matter;

- The settlement proceeds are not property of the bankruptcy estate;

- The statute of limitations applies to bar all of Whitney's claims;

- Whitney has released all claims to the settlement proceeds; and

- The doctrine of laches bars Whitney's relief request.

Doc. 7 at 2.

To reiterate, when the res judicata elements are satisfied, "then the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action

or suit, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented." *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1141 (5th Cir. Unit A Sep. 1981).[13] With this standard in mind, the court finds that res judicata precludes Huntsville Golf's first two arguments listed above: (1) its jurisdictional attack on the Confirmation Order, and (2) its contention that the settlement proceeds are not part of the Chatelain bankruptcy estate. The first argument is prototypically one that could and should have been raised in the 1992-93 proceedings. For the reasons outlined above, *see supra* pp. 8-12, the court will not allow this type of collateral attack. The law squarely prevents it.

Res judicata precludes the second argument for similar reasons. In its brief, Huntsville Golf emphasizes that (1) it is a separate legal entity than the Chatelains; (2) the settlement proceeds belong to it; and thus (3) the bankruptcy court does not have jurisdiction to dispose of its proceeds. Doc. 7 at 20-24. It also attempts to distinguish the settlement it reached with the various Brindley entities in 2011 from the arbitration award it gained only against the Brindley Construction Company. *Id.*

---

[13]This authority is controlling in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

Regardless of the merits of these arguments, they are ones that Huntsville Golf could have raised in the prior proceeding as a party in interest. *See supra* pp. 9-11. True, it could not have raised the particular arguments it makes about the 2011 settlement – that is, because it reached the settlement after the Confirmation Order. This fact is not dispositive, however. The court in 1993 put Huntsville Golf on notice that *any* monetary judgment it secured from Brindley – or its privies – would be subject to its jurisdiction. The time to intervene and raise any arguments about how a potential settlement would be treated was then. Huntsville Golf may not do so now.

## III.

This conclusion leaves Huntsville Golf's three final arguments to consider – namely, that:

- Whitney released all claims to the settlement proceeds;

- the statute of limitations bars Whitney's claims; and

- the doctrine of laches bars these claims.

The court finds these arguments unavailing.

## A.

Huntsville Golf argues that Whitney released all claims to any proceeds that Huntsville Golf secured from its settlement agreement with the Brindley Group. Doc. 7 at 36-40. This argument is premised on (1) the existence of a partnership between

28

Whitney and the Brindley Estate and (2) the fact that the Brindley Group and Huntsville Golf executed mutual releases as part of their settlement agreement. Because the court finds that Whitney and the Brindley Estate did not form such a partnership under Louisiana law, *see supra* pp. 16-22, the court rejects Huntsville Golf's release argument.

## B.

The court finds Huntsville Golf's statute of limitations argument similarly unconvincing. The corporation argues that the Confirmation Order – although a final judgment – was nevertheless a consent decree between the parties that was essentially contractual in nature. Doc. 7 at 34. The Bankruptcy Code does not prescribe a statute of limitations for commencing actions under a confirmed reorganization plan. Huntsville Golf therefore maintains that bankruptcy courts must "borrow" deadlines in such actions from the most suitably comparable state statute of limitations. *Id.* at 33-34. Because the Alabama statute of limitations for initiating a breach of contract action is six years from the alleged breach, Huntsville Golf further argues that this is the relevant time span that applies to the case. *Id.* at 34-35. The corporation asserts that the Chatelains "breached" their reorganization plan in March 1994, which was the plan deadline – 60 months – before which they were supposed to pay unsecured creditors like Whitney. *Id.* at 35. According to Huntsville Golf, Whitney thus had

until April 2000 to initiate their claim for payment under the plan. Because Whitney did not do so, Huntsville Golf concludes that the bank's claim is barred. *Id.*

This convoluted argument is legally unwarranted. Huntsville Golf correctly observes that there is no federal limitations period for enforcing bankruptcy judgments and that courts often look to comparable state statutes for guidance. *See In re Hillard Dev. Corp.*, 238 B.R. 857, 871 (Bankr. S.D. Fla. 1999) (citing 11 U.S.C. § 1142) (finding a statute of limitations "void" in the Code provision empowering bankruptcy courts to enforce confirmation plans). Indeed, "the court's task is to determine the essential nature of the claim under federal law and then focus on the period applicable to such a claim under the most analogous state law claim." *Id.* at 873 (citing *Musick v. Goodyear Tire & Rubber Co.*, 81 F.3d 136, 137 (11th Cir. 1996)) (internal quotation marks omitted). Huntsville Golf is also right that some courts have interpreted confirmed reorganization plans as contracts imposing certain performance duties on creditors and debtors. *See id.* at 871 n.21 (listing cases).

However, that is as far as the court will follow the corporation's argument. As noted above, a confirmation order is a final judgment on the merits. The court thus agrees with Whitney that, for statute of limitations purposes, the relevant state analogue is to a final judgment rather than a contract. With regard to final judgments, the Alabama Code prescribes as follows: "Within 20 years, actions upon a judgment

30

or decree of any court of this state, of the United States or of any state or territory of the United States must be commenced." Ala. Code § 6-2-32. Because Whitney was seeking to enforce a final judgment issued by a court of the United States, the bank had twenty years from the Confirmation Order's entry to initiate an action. The bankruptcy court entered the Order on November 23, 1993, and Whitney filed its motion to re-open the case on December 2, 2011. The statute of limitations thus did not bar its motion.

## C.

Neither does laches preclude Whitney's action. The Supreme Court of Alabama has stated the following about this doctrine:

> "Laches" is defined as neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar. It is an equitable doctrine applied by the courts to prevent a party that has delayed asserting a claim to assert that claim after some change in conditions has occurred that would make belated enforcement of the claim unjust. A party asserting laches as a defense is generally required to show that the plaintiff has delayed in asserting a claim, that that delay is inexcusable, and that the delay has caused the party asserting the defense undue prejudice.
>
> . . .
>
> Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he

31

cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right.

*Oak Grove Res., LLC v. White*, 86 So. 3d 963, 971 (Ala. 2011) (internal citations, quotation marks, and alterations omitted). Laches can apply to bar a party's effort to re-open a closed bankruptcy case. *See, e.g.*, *In re Delfino,* 351 B.R. 786, 789 (Bankr. S.D. Fla. 2006) ("Where, as here, the Debtor's lack of diligence in seeking to reopen the case to add an omitted creditor has resulted in that creditor incurring substantial attorneys' fees and costs in collection efforts . . . laches applies to bar reopening of the case.") (citations omitted). "[L]aches is not, like limitation, a mere matter of time, but attaches only to parties who have *unjustifiably* delayed in bringing suit." *In re James*, 487 B.R. 587, 591-92 (Bankr. N.D. Ga. 2013) (quoting *Menominee Indian Tribe of Wis. v. United States,* 614 F.3d 519, 531 (D.C. Cir. 2010) (emphasis in original). The key factors in this analysis are thus (1) length of delay and (2) material prejudice to the other party.

Huntsville Golf argues that laches applies against Whitney here because Whitney strategically waited until Huntsville Golf settled with the Brindley Group to file its motion to re-open the bankruptcy action. Doc. 7 at 40-43. Huntsville Golf argues that it was materially prejudiced by this strategic delay because it irrevocably dismissed its remaining claims against the Brindley Group as part of the settlement.

*Id.* at 42-43. Huntsville Golf highlights the covert negotiations between Whitney and the Brindley Estate to divide the settlement proceeds that were being paid into the Chatelain bankruptcy estate. *Id.* at 42. As Huntsville Golf characterizes it:

> Whitney knew the existence of its right to seek recourse in the bankruptcy court for breach of the Plan but neglected to assert those rights for over 19 years . . . Whitney's delay worked a significant disadvantage and prejudice to [Huntsville Golf], a non-debtor, who cannot be restored to the state it was in before it entered into the settlement agreement with Brindley.

*Id.*

The court does not find this argument persuasive. Whitney had to wait most of the 19-year time period between the Confirmation Order and its motion to re-open the case *because it took that long for Huntsville Golf to collect its arbitration award*. Whitney was very much at the mercy of Huntsville Golf's dilatory efforts to secure the money that Brindley owed it. As to the four-day difference between the date that Whitney and the Brindley Group settled their claims and when Whitney filed its motion to re-open the case, the court does not find this delay excessive. Moreover, the court finds that Whitney was within its rights to contract with the Brindley Estate regarding disposition of the settlement proceeds. This conduct simply does not trigger laches.

## IV.

For the foregoing reasons, the court will **AFFIRM** the bankruptcy's court's

33

opinion.

   **DONE** and **ORDERED** this the 19th day of March, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge